# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL HISTORY .................................................................................................... 1

III. ARGUMENT .................................................................................................................. 4

    A. Summary Judgment Standard ............................................................................ 4

    B. Standard of Review ............................................................................................ 5

    C. The Mental or Nervous Limitation Precludes Payment of Additional Benefits to Plaintiff .............................................................................................. 7

    D. Plaintiff does not Suffer a Physical Limitations that Qualify for Additional Benefits ............................................................................................ 10

IV. CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Aboul-Fetouh v. Employee Benefits Comm.*,
   245 F.3d 465 (5th Cir. 2001) .................................................................................. 12

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................ 5

*Black & Decker Disability Plan v. Nord*,
   538 U.S. 822 (2003) ........................................................................................... 9, 14

*Brigham v. Sun Life of Canada*,
   317 F.3d 72 (1st Cir. 2003) ................................................................................... 10

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S.Ct. 2548 (1986) ...................................................................... 5

*Corry v. Liberty Life Assurance Co. of Boston*,
   499 F.3d 389 (5th Cir. 2007) .................................................................................. 6

*Dubose v. Prudential Insurance Co. of Am.*,
   85 F. App'x. 371 (5th Cir. 2003) .......................................................................... 12

*Duhon v. Texaco, Inc.*,
   15 F.3d 1302 (5th Cir. 1994) ................................................................................ 10

*Ellis v. Liberty Life Assurance Co. of Boston*,
   394 F.3d 262 (5th Cir. 2004) .................................................................................. 6

*Firestone Tire & Rubber Co. v. Bruch*,
   489 U.S. 101, 109 S. Ct. 948 (1989) ....................................................................... 5

*Killen v. Reliance Standard Life Insurance Company*,
   776 F.3d 303 (5th Cir. 2015) ............................................................................ 5, 15

*Lain v. UNUM Life Insurance Co. of Am.*,
   279 F.3d 337 (5th Cir. 2002) .................................................................................. 6

*Lynd v. Reliance Standard Life Insurance Co.*,
   94 F.3d 979 (5th Cir.1996) ..................................................................................... 8

*McKenzie v. General Tel. Co. of California*,
   41 F.3d 1310 (9th Cir. 1994) ................................................................................ 10

*Meditrust Fin. Services Corp. v. Sterling Chems., Inc.*,
 168 F.3d 211 (5th Cir. 1999) ................................................................................. 6

*Metropolitan Life Insurance Co. v. Glenn*,
 128 S.Ct. 2343 (2008) .......................................................................................... 7

*Mouton v. Fresenius Med. Care of N. Am.*,
 77 F. App'x. 712 (5th Cir. 2003) ........................................................................ 12

*Pannebecker v. Liberty Life Asurance Co.*,
 542 F.3d 1213 (9th Cir. 2008) ............................................................................ 10

*Porter v. Lowe's Cos., Inc.'s Business Travel Accident Insurance Plan*,
 731 F.3d 360 (5th Cir. 2013) ................................................................................ 5

*Sanders v. UNUM Life Insurance Co. of Am.*,
 553 F.3d 922 (5th Cir. 2008) ................................................................................ 7

*Schexnayder v. Hartford Life & Accident Insurance Co.*,
 600 F.3d 465 (5th Cir. 2010) ................................................................................ 6

*Vega v. National Life Insurance Services*,
 188 F.3d 287 (5th Cir. 1999) ................................................................................ 6

*Wade v. Hewlett-Packard Development Co. LP Short Term Disability Plan*,
 493 F.3d 533 (5th Cir. 2007) ................................................................................ 6

## **RULES AND REGULATIONS**

Fed. R. Civ. P. 56(c) ...................................................................................................... 4

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SYLVIA BARROIS | * | CIVIL ACTION |
| | * | |
| v. | * | NO. 14-02343 |
| | * | |
| RELIANCE STANDARD LIFE | * | JUDGE ELDON E. FALLON |
| INSURANCE COMPANY | * | |
| | * | MAGISTRATE DANIEL E. |
| | * | KNOWLES, III |

**************************************

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I.　INTRODUCTION**

Plaintiff initiated this lawsuit seeking additional long term disability benefits. As explained below, the record does not support Plaintiff's claim of an ongoing disability under the Policy beyond December 12, 2013, when Reliance Standard Life Insurance Company stopped paying monthly disability benefits. By that time Plaintiff already received the maximum benefits payable for a mental or nervous disorder and she was not physically totally disabled. Accordingly, Reliance is entitled to summary judgment in its favor.

**II.　FACTUAL HISTORY**

As a former Purchasing Assistant for Superior Energy Services, Inc., Plaintiff was a participant in the company's long term disability plan, which is insured by Reliance group long term disability policy number LTD118464. (AR1-33). Claims made under the Policy are processed by Reliance, which has discretionary authority to interpret its terms and make benefit eligibility determinations. (AR14).

1

Plaintiff stopped working on June 14, 2011, and based on the information available at that time, Reliance approved her claim for disability benefits. However, benefits are paid on a monthly basis, and the burden rests with Plaintiff to prove entitlement for each continuing period of disability. (AR14). Plaintiff met her burden during the 180-day Elimination Period and for the first 24 months that immediately followed (the "Own Occupation" period) by showing that she was not capable of performing the material duties of her own occupation. Reliance paid benefits to her from December 12, 2011 through December 12, 2013. (AR420-423). However, after 24 months, Plaintiff's burden changed as specified within the Policy.

After benefits were paid for 24 months, it was no longer sufficient for Plaintiff to prove a disability from her own occupation. Rather, Plaintiff was required to prove that she was incapable of performing the material duties of any occupation for which she was qualified by training, education or experience (the "Any Occupation" definition of disability). (AR10). Moreover, Plaintiff had to show that any continuing disability was *solely* the result of a physical condition. (AR22). In other words, if Plaintiff suffered depression or any other mental or nervous disorder that caused or contributed to her continuing disability, which she did, she was not entitled to additional benefits beyond 24 months unless the disability was based entirely on her physical condition. (AR22). The facts do not support this conclusion.

When Plaintiff stopped working, she complained of fatigue, headaches, blurred vision, dizziness, confusion, muscle spasms, nausea and neck/back pain. (AR604-610, 596-597, 1034). Reliance considered all of Plaintiff's subjective complaints, as well as her treatment records before obtaining an independent neurological examination. While some of Plaintiff's treating physicians expressed opinions that Plaintiff was disabled, others disagreed. More important,

none of the objective treatment records support a continuing disability resulting from any of Plaintiff's reported symptoms.

As will be discussed within the argument section of this Memorandum, the record includes evidence that Plaintiff suffered a stroke. (e.g., AR611-612, 911. 590). However, Reliance never received evidence of a related disability that continued into December 2013. Medical studies yielded negative, unremarkable or mild results. (e.g., AR737, 711, 589, 292, 783, 784, 988-989, 935, 392, 974-975). Additionally, Plaintiff noted improvement in reported pain after physical therapy, and her therapist cleared her for physical activity at a level that exceeded that required to perform sedentary level work. (AR742, 891). Nonetheless, according to Plaintiff's counsel, Plaintiff's disability was "based on a brain injury due to a stroke which caused her mental incapacity, memory disability, migraines, psychiatric issues." (AR1130). Again, payment for an alleged disability that is caused by or contributed to by a mental or nervous disorder is limited to 24 months.

Although the record did not support any disability by the time benefits were discontinued, Plaintiff's mental condition was a factor that contributed to her disability throughout the Own Occupation period and throughout any alleged continuing disability during the Any Occupation period. As indicated in a neuropsychological evaluation performed by Kevin W. Greve, Ph.D. at the request of Plaintiff's treating physician, Plaintiff's global cognition function was intact, but she suffered "poor coping, develops physical symptoms secondary to stress." (AR548-552). According to Dr. Greve, Plaintiff was experiencing stress at home and at work, and it was "[b]ecause of this stress [that] she is experiencing a number of physical and cognitive symptoms that interfere with her ability to function effectively at work." (AR551).

Laurie Darling, Ph.D., who treated Plaintiff for Adjustment Disorder, wrote that Plaintiff's "overall reaction and response to her physical health and other psychosocial stressors is a complicating factor and presents an obstacle to her successful return to work." (AR870). Likewise, Brian Corliss, M.D.'s notes indicate moderate, fluctuating fatigue that was exacerbated by emotional stress. (AR1002-1004).

As indicated above, in addition to reviewing the medical records, Reliance also obtained an independent neurological evaluation. (AR1138-1141). Daniel Trahant, M.D. found no evidence of neurological impairment that would impact Plaintiff's ability to work. (AR1155-1158). Dr. Trahant concluded that "[a]ll of her physical complaints are on a psychological or emotional basis." (AR1157-1158).

Based on its consideration of Plaintiff's subjective complaints and review of all of the medical records, Dr. Trahant's independent opinion, and evidence of a favorable Social Security award that was issued long before Reliance discontinued benefits, Reliance determined that Plaintiff was no longer eligible for benefits after December 12, 2013. (AR464-467). Plaintiff was, by then, capable of performing not only her prior occupation but also several other occupations, including (1) order clerk, (2) accounts payable clerk, (3) receptionist, and (4) customer service representative. (AR1115-1129). Furthermore, Reliance determined that any continuing disability was clearly caused at least in part by Plaintiff's depression. Plaintiff exhausted her administrative remedies and then filed this lawsuit. (AR420-423).

### III. ARGUMENT

#### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment must be issued when "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, when, as is the case here, there exists no genuine issue of material fact, summary judgment is appropriate after there has been "adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986).

Unlike typical summary judgment proceedings, the Fifth Circuit has recognized the usual inferences in favor of the non-moving party do not apply. *Killen v. Reliance Standard Life Insurance Company,* 776 F.3d 303, 307 (5th Cir. 2015). Instead, in "ERISA benefits cases where the plan at issue vests discretion, as this one does, … '[t]he fact that the evidence is disputable will not invalidate the decision; the evidence need only assure that the administrator's decision fall [sic] somewhere on the continuum of reasonableness — even if on the low end.'" *Id*. (quoting *Porter v. Lowe's Cos., Inc.'s Bus. Travel Acc. Ins. Plan,* 731 F.3d 360, 363-64 (5th Cir. 2013)).

### B. Standard of Review

Reliance has discretionary authority to interpret the terms of the Policy and to make benefit eligibility determinations. (AR14). Therefore, the only issue is whether the denial of benefits was arbitrary and capricious. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956 (1989) ("we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the

5

administrator or fiduciary discretionary authority. . .").  Review of this question is limited to the record that was before Reliance at the time it made its final claim decision.  *See Vega v. Nat'l Life Ins. Servs.*, 188 F.3d 287, 299-300 (5th Cir. 1999) (abrogated on other grounds).

Because Reliance's "decision is supported by substantial evidence and is not arbitrary or capricious, it must prevail." *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010) (quoting *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)).  This is so even when the claimant supports her claim with alternative, substantial evidence of her own.  *See Ellis*, 394 F.3d at 273.  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lain v. UNUM Life Ins. Co. of Am.,* 279 F.3d 337, 342 (5th Cir. 2002).  In this case, there is no evidence, let alone substantial evidence that would support Plaintiff's claim or more important, that would show that Reliance's decision was arbitrary and capricious.

Reliance's decision can only be deemed arbitrary "if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999). Moreover, under the abuse of discretion standard, a court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness — even if on the low end." *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389 (5th Cir. 2007).

This Court may consider the fact that Reliance serves a dual role, as both insurer and decision maker.  The resulting, structural conflict of interest is, however, only one of many factors that the Court should consider. *Wade v. Hewlett-Packard Dev. Co. LP Short Term*

*Disability Plan*, 493 F.3d 533, 537 (5th Cir. 2007). *See also Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2351 (2008). The structural conflict serves as a tiebreaker only when the other factors are closely balanced. And, when the facts do not present a close call, the structural conflict should be deemed a non-issue. *Sanders v. Unum Life Ins. Co. of Am.*, 553 F.3d 922, 925 (5th Cir. 2008) (refusing to use the structural conflict as a tie breaker because of the absence of closely balanced evidence). Here, a tiebreaker is not needed because the evidence overwhelmingly supports the claim denial.

### C. The Mental or Nervous Limitation Precludes Payment of Additional Benefits to Plaintiff

The Policy clearly and unambiguously provides that benefits will be limited to a maximum period of 24 months for any disability for which a mental or nervous disorder, including depression and/anxiety is the cause or contributing factor.[1] (AR22). It is equally clear that Plaintiff suffered depression and/or anxiety that caused or contributed to her disability. Several of Plaintiff's own treating physicians have stated so. However, in an effort to circumvent the mental/nervous disorders limitation, during the administrative process, Plaintiff argued that her disability was "based on a brain injury due to a stroke which caused her mental incapacity, memory disability, migraines, psychiatric issues." (AR1130). Thus, Plaintiff acknowledges the impact of her psychiatric issues on her functional capacity but ignores the fact that this triggers the mental or nervous disorders limitation under the Policy. (AR1130, 22). Plaintiff's claim that her psychiatric issues were caused by a physical condition is of no legal import and is also factually flawed.

---

[1] Reliance acknowledges that if Plaintiff remained Totally Disabled solely as a result of a physical condition she would be eligible to receive benefits beyond 24 months. However, the evidence does not support that conclusion.

In *Lynd v. Reliance Standard Life Ins. Co.,* 94 F.3d 979, 983 (5th Cir.1996), the Fifth Circuit "addressed the interpretive issues raised by the allegation that the 'physical' aspects of 'mental' illnesses necessarily impact the construction of such qualifying phrases as 'mental or nervous disorders' used in ERISA plans." The Court recognized that lay people "properly and necessarily characterize[ ] as 'mental disorders'" conditions such as depression based on the symptoms presented even though they "have a 'physical' aspect and/or origin, as well." *Id*. As in this case, the plaintiff's own medical doctor stated that Lynd's disability would resolve if the mental or nervous disorder symptoms resolved. *Id*. at 984. Accordingly, the Court concluded that the 24 month limitation on benefits applied.

Contrary to Plaintiff's claim that her psychiatric issues were caused by the stroke that she suffered, Dr. Greve observed that Plaintiff "is experiencing significant stress at home and because of her work-related issues. Because of this stress she is experiencing a number of physical and cognitive symptoms that interfere with her ability to function effectively at work." (AR551). According to Dr. Greve's neuropsychological evaluation, Plaintiff suffered "poor coping" and "develops physical symptoms secondary to stress." (AR548). Dr. Greve concluded that it is "likely that [Plaintiff's] coping skills are not sufficient to manage this stress effectively and efficiently." (AR551). According to Dr. Greve, Plaintiff demonstrated "difficulty with higher level working memory;" however, the "non-specific finding could be related to the cerebellar stroke *but shows signs of being stress-related*." (AR551) (emphasis added).

Dr. Corliss, another of Plaintiff's treating physicians, also acknowledged the impact of Plaintiff's mental capacity on her ability to function. (AR1002-1004). According to Dr. Corliss, Plaintiff suffered moderate fatigue that fluctuated in both duration and intensity and that was exacerbated by *emotional stress*. (AR1002-1004).

8

Dr. Darling, who treated Plaintiff for Adjustment Disorder wrote that Plaintiff's "overall reaction and response to her physical health and other psychosocial stressors is a complicating factor and presents an obstacle to her successful return to work." (AR870). Through treatment, Dr. Darling sought to improve Plaintiff's "coping skills" in an effort to "reduce mood disturbance and enhance overall functioning, including a successful return to work." (AR870). Dr. Darling recommended, from a psychological perspective, a part-time return to work at a light level. (AR870). Under the Any Occupation standard, Plaintiff must only be capable of working in a sedentary position.

Reliance is not bound by the opinions of Plaintiff's treating physicians. *See Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834 (2003). However, Reliance considered all of the medical records provided on behalf of Plaintiff, and the record evidence of the contributory impact of Plaintiff's mental condition was significant. Although it was apparent that Plaintiff's mental condition was a factor in her alleged inability to function in any occupation beyond December 12, 2013, the neurological independent medical examination performed by Dr. Trahant resolved any doubt. (AR1138-1141). Dr. Trahant concluded that Plaintiff is not impaired form a neurological/physical perspective. (AR1157-1158). Rather, he believed that Plaintiff has "a great deal of underlying psychogenic factors in her ongoing symptomatology with regard to dizziness, nausea, and headaches, as well as memory difficulty." (AR1157-1158). Still, considering Plaintiff's reported complaints, the treatment records, report of Dr. Greve and the results of his own evaluation, Dr. Trahant concluded that no restrictions were warranted. (AR1157-1158).

Relative to Plaintiff's reported physical symptoms, Dr. Trahant concluded that further neurological treatment was not necessary. Dr. Trahant determined that Plaintiff was

"neurologically intact and has no residual symptomatology from a cerebellar infarction." (AR1159-1160). However, Dr. Trahant did recommend clinical psychological care. (AR1159-1160). According to him, "[a]ll of her psychical complaints are on a psychological or emotional basis." (AR115-1160). Thus, they are subject to the limitation. Again, the Policy explicitly limits benefits to a maximum, life-time duration of 24 months for any disability that is "caused by or contributed to by mental or nervous disorders," including "depressive disorders". (AR22). The provision cannot be ignored and has routinely been enforced, like in *Lynd*. Reliance has already paid to Plaintiff 24 months of benefits. (AR420-423). She is not entitled to more because she suffers no physical condition that renders her disabled by itself.

### D. Plaintiff does not Suffer a Physical Limitations that Qualify for Additional Benefits

The only way that Plaintiff could be eligible for benefits beyond 24 months is if she proved that she suffered a physical condition that alone renders her totally disabled from any and all occupations as of December 12, 2013. (AR420-423). By definition, any occupation is one for which Plaintiff "is reasonably suited based upon his/her education, training or experience." (AR9). The Any Occupation test is a difficult hurdle for Plaintiff, a high school graduate with many transferable skills, to overcome. *See Duhon v. Texaco, Inc.*, 15 F.3d 1302 (5th Cir. 1994) (a 65 year old man with only a high school education was not disabled from any occupation). *See also Pannebecker v. Liberty Life Assur. Co.*, 542 F.3d 1213, 1219 (9th Cir. 2008) (the "language of the 'any occupation' standard is not demanding"); *McKenzie v. General Tel. Co. of California*, 41 F.3d 1310, 1317 (9th Cir. 1994) (same); *Brigham v. Sun Life of Canada*, 317 F.3d 72, 86 (1st Cir. 2003) (a paraplegic claimant with severely limited function who was experiencing muscle pain was not totally disabled under the any occupation standard).

Plaintiff, who was 44 years old when benefits ended, is a skilled high school graduate. (AR608). She has held multiple positions as an administrative assistant and was employed as a Purchasing Assistant immediately prior to claiming disability. (AR610). The position is one which, as performed in the national economy, requires an employee to "verif[y] nomenclature and specifications of purchase requests…search[] inventory records or warehouse to determine if material on hand is in sufficient quantity… consult[] catalogs and interviews suppliers to obtain process and specifications… type[] or write[] invitation-of-bid forms and mail[] forms to supplier firms or for public posting… write[] or type[] purchase order and send[] copy to supplier and department originating request… compile[] records of items purchased or transferred between departments, prices, deliveries, and inventories… compute[] total cost of items purchased, using calculator… confer[] with suppliers concerning late deliveries." (AR688). As performed for her prior employer, Plaintiff's position required her to demonstrate, among other things, "[g]ood verbal and written communication and troubleshooting skills," "operate[] various office equipment," proficiency in Microsoft Word and Excel, ability to accurately complete and maintain reports and records, and "[i]nterpret a variety of technical instructions." (AR668).

As part of the claim review, Reliance performed a Residual Employability Analysis to determine to what, if any, occupations Plaintiff could transfer her skills. (AR1115-1129). It was determined that Plaintiff possessed the skills necessary to perform her prior occupation, as well as four other sedentary occupations, including order clerk, accounts payable clerk, receptionist and customer service representative. (AR1116). Plaintiff was physically capable of performing the tasks required of each of these sedentary occupations when benefits ceased on December 12, 2013, despite her complaints.

Despite Plaintiff's subjective complaints, all of which were considered, there is no supporting, objective evidence in the record that supports a disability. The lack of supporting, objective evidence is fatal for Plaintiff's claim. *See e.g.*, *Dubose v. Prudential Ins. Co. of Am.*, 85 F. App'x. 371 (5th Cir. 2003) (affirming decision to deny benefits where treating physician supported plaintiff's claim but record lacked objective evidence of the alleged disability); *Mouton v. Fresenius Med. Care of N. Am.*, 77 F. App'x. 712 (5th Cir. 2003) (affirming decision to deny benefits in the absence of objective proof of disability); *Aboul-Fetouh v. Employee Benefits Comm.*, 245 F.3d 465 (5th Cir. 2001) (same).

In this case, Plaintiff complains that she is disabled due, in part, to fatigue. However, Dr. Newman was never able to determine the cause of her reported fatigue. (AR793-796). Dr. Corliss also considered the complaint, but determined that the symptom, which fluctuated in intensity and duration, was exacerbated by emotional stress. (AR1002-1004). Again, any disability that is caused by or contributed to by a mental or nervous condition is limited to the 24 months of benefits already paid to Plaintiff. Moreover, even if Plaintiff's reported fatigue cannot be attributed to a mental or nervous condition, there is no objective evidence that her reported fatigue is disabling.

Objective evidence of disabling headaches is also lacking. In fact, Plaintiff underwent a MRV study, which was "essentially normal" and an MRI study which revealed chronic infarct (i.e., evidence of a stroke), which is undisputed. (AR711, 590). Indeed, Reliance began paying benefits to Plaintiff in 2011. However, Plaintiff's condition improved and she was not capable of proving an ongoing physical disability by December 2013.

An August 10, 2011 MRA of Plaintiff's brain was unremarkable. (AR935). In July 22, 2013, Plaintiff continued to complain of headaches, which she described as only moderate in

severity. Again, there is no evidence that the condition was severe enough to render Plaintiff disabled, and Reliance reasonably discontinued benefit payments in the absence of evidence of any other disabling symptoms.

As noted above, Plaintiff also complains that she is disabled due to dizziness and blurred vision. There is absolutely no objective record evidence of impairing dizziness. Likewise, such evidence is lacking with regard to Plaintiff's vision complaints. In fact, on September 14, 2011, Dr. Newman noted that Plaintiff was seen by an eye doctor and was "mostly ok." (AR775).

Reliance considered Plaintiff's complaints of pain. However, a May 5, 2011 study of Plaintiff's cervical spine was unremarkable. (AR737). "No significant abnormalities" were noted on a November 2011 scan. (AR932). Further, Plaintiff's physical therapist noted that Plaintiff's complaints of pain were reduced from 6/10 to 4/10 relative to complaints of cervical pain and from 9/10 to 6-7/10 relative to her lumbar pain following a month of treatment. (AR742). Plaintiff's therapist recommended only that she avoid *heavy* lifting, excessive overhead activity, bending or uninterrupted sitting or standing for periods in excess of 30 minutes. (AR891). Such activity is not required of the sedentary occupations identified by Reliance. (AR1115-1129).

According to Plaintiff, all of her alleged problems stem from the stroke that she suffered. (AR1130). There is no doubt that Plaintiff's medical history includes evidence of a stroke. Records from 2011 document an abnormal MRI of the brain indicative of left cerebellar infarct. (AR611-612, 911). Benefits commenced in 2011. However, two years later, Dr. Trahant concluded that Plaintiff was not limited from a neurological standpoint. (AR1157-1160). He attributed her allegedly disabling symptoms, including dizziness, nausea, headaches and memory

problems to psychogenic factors as discussed above, which are subject to the 24 Mental or Nervous Disorders limitation that Reliance was obligated to enforce under the Policy.

Relative to Plaintiff's neurological treatment, Reliance also considered follow-up cardiac testing and assessments that were ordered after Dr. Mohnot completed a neurological consultation on May 19, 2011. (AR574-576). However, a May 24, 2011 EEG study was normal, and a June 22, 2011 Holter monitor test was only "[m]ildly abnormal." (AR792), Plaintiff underwent a cardiac examination on July 14, 2011, which was normal, and by December 20, 2011, Plaintiff reported that her chest pain had improved. (AR784, 763).

It is not lost on Reliance that several of Plaintiff's treating physicians told Reliance that she was disabled. It is also not lost on Reliance that Plaintiff was awarded Social Security disability benefits. However, again, the opinions of Plaintiff's treating physicians are not binding on Reliance. *See Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834 (2003). Nor are the findings of the Social Security Administration binding on Reliance. *See Id.* Plaintiff cannot prove that Reliance acted unreasonably in rejecting the opinions of her treating physicians, especially here, where the opinions (1) were not supported by the medical evidence and (2) did not consider the impact of Plaintiff's mental condition on her subjective complaints of limitations. Likewise, Plaintiff cannot prove that Reliance erred by not following a Social Security determination, which awarded benefits to Plaintiff more than a year before Reliance ceased payments based upon review of a record that did not contain all of the information available to Reliance.

In *Killen*, the Fifth Circuit stated that when there are "conflicting medical opinions, with the plaintiffs' treating physicians generally supportive of a finding of disability and the defendants' internal reviews or independent examining physicians determining otherwise" the

decision to deny the claim cannot be considered an abuse of discretion. *Killen*, 776 F.3d at 309. In reaching this conclusion, the Court "acknowledged, [that] it is the role of the ERISA administrator, not the reviewing court, to weigh valid medical opinions." *Id*. As in *Killen*, the denial of this benefit claim is supported by "valid medical opinions" and cannot be considered an abuse of discretion.

## IV. <u>CONCLUSION</u>

Because Plaintiff was not physically totally disabled after receiving benefits for 24 months, she was not eligible to receive additional disability benefits. Accordingly, Reliance's claim decision was not an abuse of discretion and it is entitled to judgment in its favor.

Respectfully submitted,

TAYLOR, WELLONS, POLITZ & DUHE, APLC

*s/Angela J. O'Brien*

———————————————————
PAUL J. POLITZ (#19741)
ANGELA J. O'BRIEN (#34010)
1515 Poydras Street, Suite 1900
New Orleans, LA 70112
Telephone: (504) 525 9888
Facsimile: (504) 525 9899
COUNSEL FOR RELIANCE STANDARD LIFE
INSURANCE COMPANY