| | | |
|---|---|---|
| **SYLVIA BARROIS** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO.: 2:14-cv-002343** |
| **RELIANCE STANDARD** | * | **JUDGE:  FALLON** |
| **LIFE INSURANCE COMPANY** | | |
| | * | **MAGISTRATE:  KNOWLES** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

## INTRODUCTION

The issue before this Court involves whether the insurance company (defendant, Reliance, owes benefits from December 12, 2013 until October 13, 2014 (10 months) or until the claimant ceases to be disabled.  The issue of whether the plaintiff will qualify for benefits in the future for instance 2016 or 2020 is not before this Court.  If the court finds in favor of the defendant, then the plaintiff asks for a dismissal without prejudice as to future benefits.

## BACKGROUND

The plaintiff purchased a disability insurance policy from Reliance Standard Life Insurance Company.  She paid her monthly premiums for many years to cover her in case she became ill from an illness such as having a stroke.  The plaintiff had two strokes in 2011 and it is undisputed she is 100% tot ally permanently disabled from the stroke.  The defendant confirmed the plaintiff is 100% disabled due to plaintiff's June 2011, stroke and paid benefits for two years ending December 12, 2013.  The Social Security Administration also ruled that plaintiff is 100% disabled from "any gainful employment" from June 2011 forward.

The plaintiff is under the care of neurologist, D. C. Mohnot, M.D., who has indicated the plaintiff is totally disabled under the policy. Dr. Mohnot states plaintiff has several problems from the stroke including:

> confusion, impaired memory, difficulty finding words to express, fluctuating high blood pressure, visual impairment, migraine headaches, and has advised her not to drive, she gets tired easily, she has difficulty with her household activities, has a short attention span, suffers from forgetfulness, loss of train of thought, had difficulty making decisions, suffers from depression, and is unable to multitask. (AR1176)

Dr. Mohnot further opined that plaintiff was 100% disabled from any gainful employment:

> Based on clinical history and symptoms it is my opinion that she is unable to hold any gainful employment. (AR1176)

In the case before this Court, it is undisputed that the plaintiff has had two physical strokes in 2011. It is undisputed that the plaintiff has many problems including speech, coping, remembering, sitting, walking, driving, headaches, confusion, impaired memory, difficulty finding words to express, fluctuating high blood pressure, that make her disabled. The policy mandates the defendant to pay the disability claim December 12, 2013 until October 13, 2013, because the plaintiff is disabled because of a physical illness (stroke).

## PLAINTIFF'S CONCISE FACTS

1. Plaintiff purchased a disability policy from defendant. (AR 4-26)

2. The plaintiff paid all premiums due on the policy.

3. The policy was in effect at all times pertinent

4. The defendant insurer verified and confirmed the plaintiff had two strokes in 2011 and was totally disabled from June 2011 until December 12, 2013, due to plaintiff's symptoms from the stroke.

5. The defendant denied the claim from December 12, 2013, alleging plaintiff was not totally disabled. (AR 482)

6. The United States Disability Court issued a Judgment that plaintiff is total disabled from any gainful employment from 2011 through the present. (AR 961-963)

7. The plaintiff's treating physicians have indicated plaintiff is totally disabled and unable to hold any gainful employment. (AR 1176)

8. The defendant's doctor did not indicate plaintiff could hold gainful employment. (AR 1138)

9. No physician has approved any job plaintiff could physically perform because she has physical problems including:

> confusion, impaired memory, difficulty finding words to express, fluctuating high blood pressure, visual impairment, migraine headaches, and has advised her not to drive, she gets tired easily, she has difficulty with her household activities, has a short attention span, suffers from forgetfulness, loss of train of thought, had difficulty making decisions, suffers from depression, and is unable to multitask. (AR1176)

10. The plaintiff filed suit on October 13, 2014, requesting benefits from December 12, 2013 through October 13, 2014. The administrative record was closed October 13, 2014, when plaintiff filed suit.

11. The plaintiffs' current lawsuit involves disability benefits from December 12, 2013 through October 13, 2014. The plaintiff has an additional claim for future disability

benefits from October 13, 2014 into the future, which is not before this Court. This claim is pending at the administrative level.

12.  The plaintiff's case should not be dismissed with prejudice as the plaintiff may become physically worse and disabled under any definition of disability in the future. The plaintiff's future disability claims will be determined in the future.

## **FACTUAL BACKGROUND**

1.  The plaintiff is a 42-year-old mother and wife who was employed as an office worker for many years before having two strokes in May 2011.

2.  The plaintiff had been working for over 20 years and her family needed her salary to survive.

3.  The plaintiff therefore, purchased a disability insurance policy (from defendant), to protect herself and her family in case she became disabled and unable to earn a salary.

4.  The plaintiff paid money every week for many years to purchase the disability policy, in case she became disabled from an illness such as a stroke, heart attack, back, or neck disability.

5.  The defendant, Reliance issued group long term disability policy number LTD 118464 to Superior Energy Services, Inc. as part of Superior's employee welfare benefit plan. (AR0001-AR0033).

6.  While employed by Superior, Plaintiff was eligible to participate in the Plan and was covered under the Policy. (AR0001-AR0033).

7.  The plaintiff had two undisputed strokes in May 2011, causing plaintiff to be totally disabled.

8. A stroke is a physical injury and physical disability which is caused when the blood supply to a part of the person's brain is interrupted, depriving oxygen and nutrients. A stroke is a physical injury, that within minutes the physical brain cells begin to die.

9. The plaintiff's strokes in May 2011, caused plaintiff to have memory loss, paralysis, loss of muscle control, problems speaking, vision problems, problems walking, headaches, confusion, stabbing pain, fatigue, fluctuating blood pressure, cerebellar infarct , neck and back pain. (AR1176)

10. Plaintiff stopped working for Superior on June 14, 2011 and submitted a claim to Reliance for disability benefits under the Policy, due to a medical diagnosis of fatigue, headaches, blurred vision, dizziness, confusion, memory loss, muscle spasms, nausea and neck and back pain. (AR0604 - AR0610, AR0596 – AR0597, AR1034).

11. Reliance reviewed and approved Plaintiff's claim based on the medical documentation that was initially provided. (AR0420-AR0423).

12. Medical records submitted by Plaintiff and plaintiff's physicians revealed a history of a stroke. (AR0611-AR0612, AR0911, AR0590).

13. Dhanpat Mohnot, M.D., plaintiff's neurologist, described an abnormal MRI of the brain indicative of chronic left cerebellar infarct, a/k/a stroke. (AR6011-AR0612).

14. A May 17, 2011, MRI of plaintiff's brain revealed small chronic infarcts of the left cerebellum and evidence of anemia; a/k/a stroke. (AR0911).

15. Plaintiff had an MRI of Cervical Spine on May 22, 2011.

16. Plaintiff underwent a neurological consultation on May 19, 2011, and a follow-up cardiac evaluation was recommended. (AR0574-AR0576).

17. An EEG performed on May 24, 2011. (AR0589).

18. On May 23, 2011 MRV study of plaintiff's head. (AR0711).

19. William Newman, M.D. evaluated plaintiff on June 16, 2011, and indicated plaintiff was disabled due to a physical stroke. (AR0793-AR0796).

20. Plaintiff had an abnormal Holter monitor" test on June 22, 2011. (AR0792).

21. In a June 23, 2011 note, Dr. Newman reported that Plaintiff had "[a]bnormal bone marrow enhancement on MRI of the brain". (AR0983-AR0985).

22. Based on her physical state and the destruction of part of her brain, Dr. Newman determined that Plaintiff was unable to return to work. (AR0570-AR0571).

23. According to Dr. Mohnot, the stroke caused permanent physical injury to plaintiff's brain. Plaintiff suffered episodes of confusion, stabbing pain, headaches, fatigue, fluctuating blood pressure, short term memory problems, cerebellar infarct and history of a stroke that prevented her from working at that time. (AR0568-AR0569).

24. Plaintiff underwent a renal artery Doppler examination on July 14, 2011. (AR0783).

25. A cardiac examination was performed on July 14, 2011. (AR0784).

26. Dr. Mohnot reported, on August 8, 2011, that plaintiff was suffering daily headaches, confusion and decreased memory all because the stroke has permanently killed brain cells in plaintiff's brain. (AR0525).

27. An August 10, 2011 MRA of the brain. (AR0935).

28. To further evaluate plaintiff's condition, Dr. Mohnot ordered a neuropsychological evaluation, which was performed by Kevin W. Greve, Ph.D. on July 20, 29 and August 9, 2011. (AR0548-AR0552).

29. Dr. Greve noted impaired concentration and impaired spatial function, cognitive function loss, language function loss, memory problems and executive function loss. (AR0548-AR0552, AR0775).

30. Dr. Greve also reported that from a psychological perspective, plaintiff suffers "poor coping, develops physical symptoms secondary to stress which was brought on by the physical stroke and loss of brain function" (AR0548).

31. Dr. Greve diagnosed Plaintiff with "Adjustment Disorder", "Cognitive Disorder" and "Cerebrovascular Accident (cerebellar stroke) by history and relates these problems 100% to the physical stroke plaintiff has in early 2011" before writing:

> There is evidence of mild spatial disorganization consistent with her cerebellar pathology. Also noted was difficulty with higher level working memory in the context of intact attention/concentration. This is a non-specific finding that could be related to the cerebellar stroke but shows signs of being stress-related.
> Ms. Barrois is experiencing significant stress at home and because of her work-related issues. ***Because of this stress she is experiencing a number of physical and cognitive symptoms that interfere with her ability to function effectively at work***. It is likely that her coping skills are not sufficient to manage this stress effectively and efficiently.
> (AR0551) *(emphasis added)*.

32. Dr. Greve felt that "[i]ncreased activity and function should be encouraged by all her treaters." Dr. Greve encourages all stroke victims to attempt increase activity and function. Dr. Greve has never indicated plaintiff could work. (AR0551).

33. Following the neuropsychological evaluation, Dr. Mohnot continued to declare Plaintiff disabled in September and October 2011, but stated that he would reassess Plaintiff's ability to work in November. (AR0528-AR0529, AR0554, AR0526-AR0527, AR0523, AR0524). Dr. Mohnot has indicated plaintiff is total permanently disabled, 100% ongoing from June 2011 through the present. (AR 1176).

34. Dr. Mohnot saw Plaintiff again on November 8, 2011. Dr. Mohnot has never indicated plaintiff was employable due to problems relating to plaintiff's stroke. (AR0511-AR0512).

35. During this time, Reliance continued to pay a separate short term disability claim for benefits and relative to that claim, Reliance noted:

> Based on summary of diagnosis from neuropsychological eval. And that EE has been treating with Psychologist, I am extending benefits through NOV with Dr. Mohnot on 11/8/11. Will request updated documentation from Dr. Gallagher, Physical therapy and Dr. Mohnot. Once documentation is reviewed, if EE is not released to RTW I will send for full nurse review.
> (AR0530, AR0566-AR0567).

36. On December 2, 2011, Laurie Darling, Ph.D., who was treating Plaintiff for Adjustment Disorder, wrote:

> …the condition for which I am treating [Plaintiff] is not inherently disabling from a psychological perspective. However, *her overall reaction and response to her physical health and other psychosocial stressors is a complicating factor and presents an obstacle to her successful return to work. Therefore, goals of treatment have included improving her coping skills to reduce mood disturbance and enhance overall functioning, including a successful return to work*.
> (AR870) *(emphasis added)*.

Dr. Darling has never indicated plaintiff was not disabled due to the stroke and related problems.

37. On December 8, 2011, Dr. Newman reported that Plaintiff was still unable to return to work. (AR0691-AR0692).

38. Plaintiff reported to Lakisha Bastian, M.D. with complaints of chest pain on December 9, 2011. (AR0768- AR0770).

39. Plaintiff's back pain was evaluated in a physical therapy progress note on December 9, 2011. (AR0742).

40. Plaintiff's cervical spine pain complaints were reduced from 6/10 to 4/10 in the month since her initial visit, and her lumbar pain had decreased from 9/10 to 6-7/10; however, Plaintiff reported that she was still only able to tolerate 30 minutes of sitting. (AR0742).

41. On December 23, 2011, Dr. Williams, Plaintiff's internal medicine physician reported that Plaintiff "has a neurological disorder with weakness that is undergoing evaluation and treatment. It is unclear when she can return to work." Dr. Williams has never released plaintiff to work. (AR0750).

42. On December 28, 2011, Plaintiff's physical therapist reported on Plaintiff's condition, relative to complaints of cervical and lumbar back pain and noted:

> Due to continued neck and low back pain it is recommended that Sylvia avoid heavy lifting (>20 lbs.), excessive overhead activity, bending and uninterrupted sitting and standing longer than 30 minutes as these activities continue to exacerbate her condition of spine pain.

The plaintiff's physical therapist has never released plaintiff to work.

43. Based on information available to it, specifically plaintiff had a physical stroke which killed off brain tissue and parts of plaintiff's brain. The plaintiff has multiple issues due to this physical trauma from the stroke, including evidence of a mental or nervous disorder that impacted Plaintiff's ability to function, Reliance approved Plaintiff's claim for long term disability benefits. (AR0420-AR0423).

44. The Policy pays benefits for 24 months to a qualified insured that proves that he/she is incapable, due to an injury or sickness, of performing the material duties of her regular occupation. (AR0010).

45. The policy at issue does not limit benefits to 24 months for physical injuries and physical illness such as a stroke. A stroke is a physical injury/illness which causes a physical blockage in

oxygen and blood permanently killing the brain tissue and nerves to the brain, when the brain cells and tissue die, the plaintiff has mental loss, coping problems, stress, pain, which all occur because the brain tissue is now partially dead. The policy does not limit a stroke to 24 months. Plaintiff's benefit payments commenced December 12, 2011, following a Policy-mandated Elimination Period during which benefits are never payable. (AR0007, AR0420-AR0423).

46. By letter dated September 26, 2013, Reliance notified Plaintiff that additional benefits were only payable beyond December 12, 2013 if Plaintiff was disabled from any occupation for which she qualified due solely to physical restrictions and limitations. It is undisputed that all the physicians treating plaintiff have opined plaintiff is disabled from any occupation for which she is qualified. (AR0464-AR0467).

47. Plaintiff was determined by the United States Disability Court that she is totally disabled from June 2011 forward (AR0961-AR0965).

48. On April 13, 2012, Brian Corliss, M.D. noted that Plaintiff's fatigue was moderate and fluctuated in intensity and duration, and was exacerbated by emotional stress. (AR1002-1004).

49. On July 22, 2013, Plaintiff was evaluated for a headache that she described as moderate in severity. (AR01108-AR1109).

50. Plaintiff appealed Reliance's determination, and argued that her disability was "based on a brain injury due to a stroke which caused her mental incapacity, memory disability, migraines,

51. In light of the degree of symptomatology that still exists, the prognosis is limited for full recovery. All of her physical complaints are on a psychological or emotional basis. (AR01159-AR01160).

52. On May 30, 2014, Reliance upheld the decision to terminate benefits. (AR0482-AR0489).

53. Neurologist, Dr. Mohnot, stated:

> …it is my opinion that she is unable to hold any gainful employment due to her neurological condition.

54. Reliance's decision was final, and Plaintiff filed this lawsuit.

## LAW AND ARGUMENT

**I.   THE CLAIM BEFORE THIS COURT INVOLVES 10 MONTHS OF DISABILITY DUE TO PLAINTIFF PURSUANT TO HER DISABILITY POLICY.**

The plaintiff purchased a disability policy from defendant to pay benefits to plaintiff if she became disabled.  The defendant paid benefits for two years if the plaintiff was unable to perform her clerical duties.  The defendant admitted the claimant is totally disabled as a clerical worker.  After 2 years (24 months) the policy pays benefits if the claimant is disabled from performing "material duties" as a clerical staff employee.  The issue of whether clerical and/or "substantial duties" changed for 10 months is before the Court.

### A. IT IS UNDISPUTED THE PLAINTIFF HAD TWO STROKES IN JUNE 2011.

It is undisputed that plaintiff was 100% healthy before purchasing the disability policy.  It is also undisputed that the plaintiff was physically injured having two strokes in June 2011.  The defendant confirmed the two strokes, admitting the plaintiff was 100% disabled due to the June 2011 strokes from performing her clerical duties from 12-12-11 to 12-12-13.  The defendant there on paid benefits from 12-12-13 for 24 months.

The disability policy before this Court required the defendant to pay monthly disability benefits to the plaintiff.  The policy defines total disability as:

> ...if due to an injury the insured cannot perform the material duties of any occupation.

> …we consider the insured total disabled if due to an illness
> or sickness she is capable of only performing the material
> duties on a part-time basis.  (AR0004-AR0028)

The policy further states that the insured will be paid benefits until "the date the insured

ceases to be totally disabled." (AR0004-AR0028) .  All of plaintiff's physicians have opined that

plaintiff is disabled.  Specifically Dr. Mohnot states the following:

> …it is my opinion she is unable to hold any gainful employment due to
> her neurological condition.

The Court should award disability benefits to the plaintiff as required by the disability

policy.

### B. THE DEFENDANTS' DOCTOR DOES NOT CONTRADICT PLAINTIFF'S TREATING PHYSICIAN, DR. D. C. MOHNOT, WHO INDICATES PLAINTIFF IS TOTALLY DISABLED AS DEFINED IN THE POLICY.

The defendant hired a physician, Dr. Trahant, to give an IME opinion in an attempt to

avoid paying on this claim.  Dr. Trahant visited with plaintiff for 15 minutes and wrote a report

to his client, the defendant insurance company.

Dr. Trahant confirms plaintiff had two strokes stating "apparently Ms. Barrois did have a

small vessel cerebral infraction involving the left mid to posterior cerebellar hemisphere as noted

on the 2011 MRI" (a/k/a stroke).  (AR1138).  Dr. Trahant also confirmed plaintiff's problems

from the strokes stating plaintiff had "nausea, dizziness, off-balance, speech difficulty,

headaches, fatigue, disoriented, and problems making decision."  (AR1138)

Dr. Trahant, however, did not give an opinion that plaintiff was not disabled as defined

by the policy.  Whereas Dr. Mohnot clearly indicated plaintiff could not perform any gainful

employment, Dr. Trahant merely indicated "from a neurological standpoint, I would not place

her on restrictions." (AR 1138). This is not an opinion that Ms. Barrois is not disabled. Dr. Trahant did not state whether a person with problems, such as nausea, dizziness, migraine headaches, confusion, impaired memory, difficulty finding words to express, and fluctuating high blood pressure, visual impairment, short attention span, forgetfulness, loss of train of thoughts, difficulty making decisions, depression and inability to multitask, would be able to work. Nor does Dr. Trahant opinion state that he approved any job for a person having these symptoms. Dr. Trahant merely took one element (brain_ and said she's OK. He did not say plaintiff could work with multiple problems.

Clearly, Dr. Trahant's 15 minute evaluation and vague narrative does not overcome the insurance companies "substantial evidence standard" as required by the Court.

The defendant should pay monthly benefits to the plaintiff.

## C. DR. KEVIN GREVE INDICATES PLAINTIFF IS DISABLED UNDER THE POLICY.

The plaintiff was evaluated by Dr. Kevin Greve (clinical Neuropsychology) (AR0548 – AR0551). Dr. Greve performed the following test of plaintiff:

- Animal List Generation
- Battery for Health Improvement-2
- Boston Naming Test
- California Verbal Learning Test
- Clock Drawing
- Cognistat Auditory Compensation
- Continuous Performance Test
- Controlled Oral Word Association (FAS)
- Facial Recognition Test
- Finger Tapping
- Grooved Pegboard
- Million Multiaxial Clinical Inventory-3
- Minnesota Multiphasic Personality Inventory-2
- Modified Somatic Perception Questionnaire
- NAB Orientation

- Palm Disability Index
- Portland Digit Recognition Test
- Proverbs Test
- Rey-Osterreith Complex Figure
- Sentence Repetition Test
- Stroop Color-Word Test
- Sullivan Pain Questionnaire
- Test of Memory Mallingeri
- Trail Making Test (A&B)
- Wechsler Adult Intelligence Scale-3
- Wechsler Test of Adult Reading
- Wide Range Achievement Test -3
- Wisconsin Card Sorting Test
- Word Memory Test
(AR 552)

Based on all these tests, Dr. Greves indicated plaintiff was disabled under the policy definition.

Dr. Greves did not release plaintiff to work nor was he given jobs to approve that would be appropriate for plaintiff. Dr. Greves also conformed plaintiff's stroke and opined as follows:

> Also noted was difficulty with higher level working memory in the context of intact attention/concentration. Ms. Barrios is experiencing significant stress at home and because of her work-related issues. Because of this stress she is experiencing a number of physical and cognitive symptoms that interfere with her ability to function effectively at work. It is likely that her coping skills are not sufficient to manage this stress effectively and efficiently.

Dr. Greves, as did Dr. Mohnot, indicated plaintiff had several residual problems from the stroke, which will affect her being employable. Dr. Greves also confirmed plaintiff's disability stating plaintiff had a working memory problem and a concentration problem that would cause her problems if she attempted to work.

### D. THE SOCIAL SECURITY ADMINISTRATION HAS DETERMINED PLAINTIFF IS DISABLED FROM "ANY GAINFUL EMPLOYMENT".

The plaintiff understands that this court does not have to agree with the Social Security

Administration on issues of disability. However, the Federal Social Security Administration standard is actually a higher disability standard then the disability standard in the policy before this Court. The SSDI standard is "disabled from **any** gainful employment.

The defendant had the SSDI judgment and records (AR 961-966) and again completely ignores these records. The defendant should be ordered to pay disability benefits.

## II. IF THE COURT DETERMINED THAT THE DEFENDANT DOES NOT OWE DISABILITY PAYMENTS FROM DECEMBER 12, 2013, UNTIL THE DATE THE SUIT WAS FILED ON OCTOBER 13, 2014, THE PLAINTIFF REQUESTS THE DISMISSAL BE WITHOUT PREJUDICE.

The plaintiff filed suit on October 13, 2014. The plaintiff had 2 strokes in June 2011, which have caused her to be unemployable. The defendant insurance company has confirmed the plaintiff was disabled from sedentary clerical work 100% from December 12, 2011 through December 12, 2013. As this Court is probably aware the insurance companies change the definition of disability from "your occupation" to "substantial duties" at the 24 month point.

The plaintiff contends that her "clerical job" is equivalent to "substantial duties" under the policy. For instance, if the plaintiff was a crane operator and had a stroke, the policy would pay for 24 months if the plaintiff could not operate a crane. After 24 months, the plaintiff is disabled only is she cannot perform the substantial duties of a crane operator.

In the case before this Court, the plaintiff was a clerical worker that had two strokes. She has physical problems including:

> confusion, impaired memory, difficulty finding words to express, fluctuating high blood pressure, visual impairment, migraine headaches, and has advised her not to drive, she gets tired easily, she has difficulty with her household activities, has a short attention span, suffers from forgetfulness, loss of train of thought, had difficulty making

decisions, suffers from depression, and is unable to multitask. (AR1176)

The defendant agreed plaintiff could not perform her clerical duties for 24 months. Nothing has changed. The plaintiff still has the following problems:

> confusion, impaired memory, difficulty finding words to express, fluctuating high blood pressure, visual impairment, migraine headaches, and has advised her not to drive, she gets tired easily, she has difficulty with her household activities, has a short attention span, suffers from forgetfulness, loss of train of thought, had difficulty making decisions, suffers from depression, and is unable to multitask. (AR1176)

The Court should order the defendant to pay benefits from December 12, 2013 until the date suit was filed or until the claimant ceases to be disabled. In the alternative, if the Court denies the 10 months benefits or any other benefits, the plaintiff requests this court only dismiss without prejudice. Clearly, plaintiff's stroke issue could worsen, which would make her eligible for future benefits.

## **CONCLUSION**

The plaintiff had an undisputed stroke which includes the following symptoms:

> confusion, impaired memory, difficulty finding words to express, fluctuating high blood pressure, visual impairment, migraine headaches, and has advised her not to drive, she gets tired easily, she has difficulty with her household activities, has a short attention span, suffers from forgetfulness, loss of train of thought, had difficulty making decisions, suffers from depression, and is unable to multitask. (AR1176)

Her condition continues to decline including deterioration of her speech, mental functions, and her mobility. The defendant should pay monthly benefits from December 12,

2013 until October 13, 2014.

Furthermore, the plaintiff will have a lifetime of physical and cognitive problems due to her stroke, which is the reason why she purchased the disability policy with the defendant, to insure her future in the instance she became disabled.

The defendant should be ordered to pay disability benefits to plaintiff.

In the alternative, the Court should dismiss the case without prejudice as to future disability claims made under the policy.

Gretna, Louisiana this 20th day of July, 2015.

Respectfully submitted,

SHIELDS LAW FIRM

*/s/James E. Shields, Jr.*
James E. Shields, Jr. (LSBA 24879)
311 Huey P. Long Ave. ● Gretna, LA 70053
Ph: (504) 368-0003 ● Fax: (504) 368-0002
Email: "jamey@shieldslaw.co"

## CERTIFICATE OF SERVICE

I hereby certify on this 20th day of July, 2015, I filed the foregoing Plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment with the clerk of court using the *CM/ECF* system which will send notice of said filing to:

Angela J. O'Brien, Esq.
TAYLOR, WELLONS, POLITZ & DUHE, APLC JONES, WALKER
aobrien@twpdlaw.com

*S:/James E Shields, Jr.*
Electronically signed James E. Shields, Jr.
July 20, 2015