IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

|                                            |   |                              |
|--------------------------------------------|---|------------------------------|
| SYLVIA BARROIS,                            | * |                              |
|                                            | * |                              |
|                                            | * |                              |
| Plaintiff,                                 | * |                              |
|                                            | * | CIVIL ACTION                 |
| v.                                         | * |                              |
|                                            | * | NO.:  2:14-CV-002343         |
| RELIANCE STANDARD LIFE                     | * |                              |
| INSURANCE COMPANY,                         | * | JUDGE:  FALLON               |
|                                            | * |                              |
| Defendant.                                 | * | MAGISTRATE:  KNOWLES         |
|                                            | * |                              |
| ************************************       | * |                              |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**


Respectfully submitted,

TAYLOR WELLONS POLITZ & DUHE, APLC


            *s/Angela J. O'Brien*
BY: _____
            Paul J. Politz, Esquire
            Angela J. O'Brien, Esquire
            1515 Poydras Street
            New Orleans, LA 70112
            Telephone: (504) 525-9888
            Email: PPolitz@twpdlaw.com
            Email: AOBrien@twpdlaw.com

            Attorneys for Defendant,
            Reliance Standard Life Insurance Company

Date:  July 20, 2015

# TABLE OF CONTENTS

TABLE OF CITATIONS ............................................................................................................. ii

I.      INTRODUCTION ........................................................................................................ 1

II.     RESPONSE TO PLAINTIFF'S "CONCISE FACTS" and STATEMENT OF
        "FACTUAL BACKGROUND" ................................................................................... 1

        A.      Response to Plaintiff's Concise Facts ................................................................ 1

        B.      Response to Plaintiff's Statement of Factual Background ................................. 1

III.    SUMMARY OF RELEVANT FACTS ......................................................................... 8

IV.     ARGUMENT .............................................................................................................. 10

        A.      Summary Judgment Standard and ERISA Standard of Review ......................... 11

                1.      Summary Judgment Standard ................................................................. 11

                2.      ERISA Standard of Review ................................................................... 12

        B.      Plaintiff is not Entitled to Additional Benefits ................................................. 13

                1.      Plaintiff's Claim is Subject to the Policy's 24-Month Mental or Nervous
                        Disorder Limitation ............................................................................... 13

                2.      Plaintiff is not Physically Disabled ........................................................ 15

                3.      Reliance's Decision is supported by a Reliable Independent Medical
                        Examination .......................................................................................... 19

                4.      Dr. Greve's Report Does Not Support Plaintiff's Claim ......................... 20

                        a.      Plaintiff has Misrepresented the Record ...................................... 20

                        b.      Despite Plaintiff's Claim to the Contrary, Dr. Greve's Report does
                                not Support her Claim to Additional Benefits ............................. 22

V.      THE SSA's DECISION IS NEITHER BINDING NOR DETERMINATIVE ............... 23

VI.     RELIANCE'S STRUCTURAL CONFLICT IS OF NO CONSEQUENCE................... 23

VII.    CONCLUSION ........................................................................................................... 24

# TABLE OF CITATIONS

**Cases**

*Aboul-Fetouh v. Employee Benefits Comm.*,
  245 F.3d 465 (5th Cir. 2001) .......................................................................... 16

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ....................................................................................... 11

*Black & Decker Disability Plan v. Nord*,
  538 U.S. 822 (2003) ................................................................................ 6, 7, 8

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S.Ct. 2548 (1986) ............................................................ 11

*Corry v. Liberty Life Assurance Co. of Boston*,
  499 F.3d 389 (5th Cir. 2007) .......................................................................... 13

*Dubose v. Prudential Ins. Co. of Am.*,
  85 F. App'x. 371 (5th Cir. 2003) .................................................................... 16

*Duhon v. Texaco, Inc.*,
  15 F.3d 1302 (5th Cir. 1994) .......................................................................... 16

*Ellis v. Liberty Life Assurance Co. of Boston*,
  394 F.3d 262 (5th Cir. 2004) .......................................................................... 12

*Firestone Tire & Rubber Co. v. Bruch*,
  489 U.S. 101, 109 S. Ct. 948 (1989) .............................................................. 12

*Hamburg v. Life Ins. Co. of N. Am.*, No.
  2011 U.S. Dist. LEXIS 97245 (E.D. La. Aug. 29, 2011) ................................. 2

*Killen v. Reliance Standard Life In.Co.*,
  776 F.3d 303 (5th Cir. 2015) .......................................................................... 11

*Lain v. UNUM Life Ins. Co. of Am.*,
  279 F.3d 337 (5th Cir. 2002) .......................................................................... 12

*Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*,
  168 F.3d 211 (5th Cir. 1999) .......................................................................... 12

*Metropolitan Life Ins. Co. v. Glenn*,
    128 S.Ct. 2343 (2008) ........................................................................................... 24

*Mouton v. Fresenius Med. Care of N. Am.*,
    77 F. App'x. 712 (5th Cir. 2003) ...................................................................... 16

*Porter v. Lowe's Cos., Inc.'s Bus. Travel Acc. Ins. Plan,*
    731 F.3d 360 (5th Cir. 2013) ............................................................................ 11

*Sanders v. Unum Life Ins. Co. of Am.*,
    553 F.3d 922 (5th Cir. 2008) ........................................................................... 24

*Schexnayder v. Hartford Life & Acc. Ins. Co.*,
    600 F.3d 465 (5th Cir. 2010) ........................................................................... 12

*Schully v. Cont'l Cas. Co.*,
    634 F. Supp. 2d 663 (E.D. La. 2009) .................................................................. 8

*Sweatman v. Commercial Union Ins. Co.*,
    39 F.3d 594 (5th Cir. 1994) ............................................................................. 15

*Vega v. Nat'l Life Ins. Servs.,*
    188 F.3d 287 (5th Cir. 1999) ........................................................................... 12

*Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan,*
493 F.3d 533 (5th Cir. 2007) ................................................................................. 24

## Rules

Fed. R. Civ. P. 56(c) ........................................................................................... 11

L. R. Civ. P. 56.1 ................................................................................................... 1

L. R. Civ. P. 7.4 ................................................................................................... 10

## I.    INTRODUCTION

Plaintiff has moved for summary judgment on her claim of entitlement to additional benefits under an ERISA[1]-governed long term disability policy issued by Reliance Standard Life Insurance Company. Reliance now responds pursuant to Local Civil Rule 7.

## II.    RESPONSE TO PLAINTIFF'S "CONCISE FACTS" and STATEMENT OF "FACTUAL BACKGROUND"

Pursuant to Local Civil Rule 56.1, "[e]very motion for summary judgment must be accompanied by a separate and concise statement of the material facts which the moving party contends present no genuine issue." Plaintiff's Motion is accompanied by a separate, "Concise Statement of Facts In Support of Plaintiff's Motion for Summary Judgment," consisting of nine (9) enumerated paragraphs, to which Reliance has responded separately. (Dkt. 17-1). However, Plaintiff repeats the same, nine factual allegations within her Memorandum, under the heading "Plaintiff's Concise Facts", followed by 54 separately enumerated factual allegations presented under the heading "Factual Background." It is unclear which set(s) of factual allegations are intended to comply with Local Civil Rule 56.1, and Reliance incorporates its separates responses to Plaintiff's Concise Facts and further responds to Plaintiff's Factual Background allegations in satisfaction of its obligations under Local Civil Rule 56.2.

### A.    Response to Plaintiff's Concise Facts

1-9.    See separate response filed simultaneously with this Memorandum.

### B.    Response to Plaintiff's Statement of Factual Background

1.    Admitted in part and denied in part. Upon information and belief, Plaintiff was born in 1968 and is now 46 years old. (AR595). It is admitted that Plaintiff has a history of a

---

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 – 1461.

stroke. (AR1130, 1131, 1176, 1187). It is denied that Plaintiff suffered two strokes. (AR1130, 1131, 1176, 1187).

2.      Denied. Reliance lacks knowledge sufficient to confirm the veracity of the statements in this paragraph, which are denied. It is further denied that the allegations are material to the issue of Plaintiff's alleged total disability, as the term is defined by the Policy. (AR10).

3-4.      Denied. The Policy was issued to Plaintiff's former employer and premiums were paid entirely by Plaintiff's former employer, with no contributions from Plaintiff. (AR1, 8).

5-6.      Admitted.

7.      Denied as stated. It is admitted that Plaintiff has a history of a stroke. (AR1130, 1131, 1176, 1187). It is denied that Plaintiff suffered two strokes. (AR1130, 1131, 1176, 1187). It is also admitted that Plaintiff was deemed disabled from June 15, 2011 to December 12, 2013. (AR464-467, 482-489). It is, however, denied that Plaintiff was disabled throughout this period due solely to the stroke that she suffered. (AR420-423).

8.      Denied. This statement is not supported by any record reference and is denied. (AR1-1187). Further, it is denied that the diagnosis is *per se* disabling. *See Hamburg v. Life Ins. Co. of N. Am.*, No. 10-3071, 2011 U.S. Dist. LEXIS 97245 (E.D. La. Aug. 29, 2011).

9.      Denied. Furter, the letter from D.C. Mohnot, M.D., which Plaintiff references in this paragraph, does not state that Plaintiff's reported symptoms were caused by a stroke. (AR1176). To the contrary, Dr. Mohnot identifies Plaintiff's symptoms and then states that Plaintiff "also has had a stroke in the past." (AR1176).

10.     Denied as stated.   Plaintiff stopped working and reported the "symptoms" referenced in this paragraph.  (AR604).  Plaintiff's diagnosis, according to Dr. Mohnot, was "transient alteration awareness, migraine, fatigue, neck pain, abnormal MRI brain, indicative of chronic left cerebellar infarct."  (AR611).

11-14.  Admitted.

15.     Denied.  The allegation in this paragraph is not supported by a record reference, and Reliance is unable to identify a corresponding record.  (AR1-1187).  Further, Plaintiff did undergo a cervical MRI on May 5, 2011, which was unremarkable.  (AR737).

16.     Admitted.

17.     Admitted.  By way of further response, the study was normal.  (AR589).

18.     Admitted.  Further, the results were "[e]ssentially normal."  (AR711).

19.     Admitted in part, and denied in part.  It is admitted only that William Newman, M.D. evaluated Plaintiff on June 16, 2011.  (AR793-796).  Nowhere in the record does Dr. Newman indicate that Plaintiff is disabled due to a stroke, and Plaintiff's allegation to the contrary is denied.  (AR793-796).  Further, Dr. Newman reported that he was unable to determine a cause of Plaintiff's reported fatigue.  (AR793-796).

20.     Denied as stated.  Plaintiff had a "[m]ildly abnormal Holter monitor" test on June 22, 2011.  (AR792).

21.     Admitted.  By way of further response, in the same record Dr. Newman reported that it was unclear what this finding represented.  (AR983-985).

22.     Admitted in part, and denied in part.  Based on Plaintiff's reported symptoms, Dr. Mohnot determined that she was not capable of working.  (AR570-571).  Dr. Mohnot's report

makes absolutely no reference to "destruction of part of her brain," and Plaintiff's allegation to the contrary is denied. (AR570-571).

23. Admitted in part, and denied in part. Dr. Mohnot's report includes no indication that Plaintiff's "stroke caused permanent physical injury to [P]laintiff's brain" and Plaintiff's statement in this regard is specifically denied. (AR568-569).

24-25. Admitted. By way of further response, the results were normal. (AR783, 784).

26. Admitted in part, and denied in part. Dr. Mohnot's August 8, 2011 report includes no statement or indication that Plaintiff's reported headaches, confusion and decreased memory were "all because the stroke has permanently killed brain cells in plaintiff's brain," and Plaintiff's statement in this regard is specifically denied. (AR525). To the contrary, a MRA of Plaintiff's brain performed two days later was unremarkable. (AR935).

27. Admitted. By way of further response, the results were unremarkable. (AR935).

28. Admitted.

29. Admitted in part, and denied in part. It is admitted that Dr. Greve noted impaired concentration. Dr. Greve reported mildly impaired spatial function. It is denied that Dr. Greve reported cognitive function loss, language function loss, memory problems and executive function loss. To the contrary, Dr. Greve specifically reported that Plaintiff's global cognitive function, language function, memory and executive function were all intact. (AR548-552, 775).

30. Denied. Plaintiff misrepresents Dr. Greve's report, the relevant language from which states only that Plaintiff exhibits "poor coping; develops physical symptoms secondary to stress." (AR548). The report ***does not*** state, as Plaintiff has added, that this was "brought on by the physical stroke and loss of brain function." (AR548).

31. Admitted in part, and denied in part. Plaintiff again misrepresents the document that she purportedly quotes. Nowhere in his report does Dr. Greve state that Plaintiff's Adjustment Disorder, Cognitive Disorder or Cerebrovascular Accident (cerebellar stroke) by history "relates…100% to the physical stroke plaintiff ha[d] in early 2011," and Reliance specifically denies Plaintiff's allegation to the contrary. Further, Plaintiff has blatantly omitted pertinent portions of the block quotation in this paragraph. Specifically, Plaintiff has omitted Dr. Greve's statement that "[c]urrent testing demonstrates essentially intact cognition including memory" and that the evidence of Plaintiff's mild spatial disorganization "is not likely to have much functional impact." (AR551).

32. Admitted in part, and denied in part. It is admitted only that Dr. Greve wrote that "[i]ncreased activity and function should be encouraged by all her treaters." Dr. Greve did not write, nor did he indicate that he "encourages all stroke victims to attempt increase activity and function" and Plaintiff's statement to the contrary is not supported by the record and is denied. (AR1-1187). Further, it is denied that Dr. Greve's report does not indicate that Plaintiff is capable of working from a physical perspective, as Dr. Greve wrote, in part: "[c]urrent testing demonstrates essentially intact cognition including memory. There is evidence of mild spatial disorganization consistent with her cerebellar pathology. This is not likely to have much functional impact." (AR551).

33. Admitted in part, and denied in part. Dr. Mohnot attempted to support Plaintiff's claim of disability as of the dates of his submissions, including the July 7, 2014 letter referenced in this paragraph; however, it is denied that Dr. Mohnot has declared Plaintiff to be "permanently" disabled. By way of further response, it is denied that Dr. Mohnot's opinion is

supported by the record or binding on Reliance.  (AR1176, 464-467, 482-489).  *See also Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003).

34-35. Admitted.

36.     Admitted.  By way of further response, Dr. Darling does not state that Plaintiff is disabled as a result of a stroke.  (AR870).

37.     Admitted.  The doctor's opinion is denied, however.

38.     Admitted.  Further, a chest x-ray performed the same day was negative, and Plaintiff's chest pain was notably improved by December 20, 2011.  (AR974-975, 763).

39-40. Admitted.

41.     Admitted.  By way of further response, no supplemental records were submitted to show that Dr. Williams still considered Plaintiff disabled two years later, in December 2013, when benefits were discontinued.  (AR1-1187).

42.     Admitted in part, and denied in part.  It is admitted that Plaintiff's therapist wrote the statement quoted within this paragraph.  It is denied that Plaintiff's therapist never released her to work, as the quoted restrictions are consistent with sedentary level activity.  (AR891).

43.     Denied.  It is specifically denied that Reliance approved Plaintiff's claim because "plaintiff has a physical stroke which killed off brain tissue and parts of plaintiff's brain" and it is further denied that Plaintiff "has multiple issues due to this physical trauma from the stroke, including evidence of a mental or nervous disorder that impacted Plaintiff's ability to function," which underlying allegations are also denied.  (AR420-423).  Based on information available to it, including evidence of a mental or nervous disorder that impacted Plaintiff's ability to function, Reliance approved Plaintiff's claim for long term disability benefits.  (AR420-423).

44.     Admitted.

45.     Denied as stated.  It is admitted that benefits commenced December 12, 2011, following an Elimination Period, during which benefits are never payable.  (AR420-423).  The Policy's 24 month Mental or Nervous Disorders limitation does not apply when a disability is solely the result of a physical disability.  (AR22).  Further, the Policy does not pay benefits simply because of a diagnosis.  (AR10).  Rather, when benefits ceased, Plaintiff was required to (but did not) demonstrate that "as a result of an Injury or Sickness…[she] cannot perform the material duties of Any Occuapation…"  (AR10).  Plaintiff's statement that "[a] stroke is a physical injury/illness which causes a physical blockage in oxygen and blood permanently killing the brain tissue and nerves to the brain, when the brain cells and tissue die, the plaintiff has mental loss, coping problems, stress, pain, which all occur because the brain tissue is now partially dead" is not supported by any reference to the record and is denied.  (AR1-1187).

46.     Admitted in part, and denied in part.  It is denied that it is "undisputed that all of the physicians [or medical providers] treating plaintiff have opined plaintiff is disabled from any occupation for which she is qualified".  Dr. Darling recommended that Plaintiff return to work at a light level, part-time initially, with restrictions based on Plaintiff's mental, not physical, condition.  (AR870).  Further, Plaintiff's physical therapist recommended restrictions and limitations that are consistent with sedentary level work capabilities.  (AR891).  By way of further response, it is denied that the opinions of those treating physicians who do support Plaintiff's disability claim are binding on Reliance.  *See Id.*

47.     Denied.  Upon information and belief, the "United States Disability Court" does not exist.  By way of further response, the Social Security Administration ("SSA") approved

Plaintiff's disability claim. (AR961-965). Although the SSA determination must be (and was) considered, it is denied to the extent implied that the SSA's determination is binding on Reliance. *See Schully v. Cont'l Cas. Co.*, 634 F. Supp. 2d 663 (E.D. La. 2009).

48-49. Admitted.

50. Denied as stated. When appealing Reliance's decision to discontinue benefits, Plaintiff argued that her disability was "'based on a brain injury due to stroke which caused her mental incapacity, memory disability, migraines,' [and] *psychiatric issues*." (AR1130) (emphasized language which appears in the source document was omitted from the quote in this paragraph in Plaintiff's statement of facts).

51. Denied as stated.

52. Admitted.

53. Admitted. Further, it is denied that the opinion of Dr. Mohnot is supported by the record or binding on Reliance. (AR1-1187). *See also Nord*, 538 U.S. 822 (2003).

54. Admitted.

## III.   SUMMARY OF RELEVANT FACTS

The facts are detailed at length within Reliance's opening brief in support of its Motion for Summary Judgment. (Dkt. 15). For ease of reference and to avoid confusion created by factual misrepresentations in Plaintiff's brief, Reliance now summarizes the relevant facts again.

Plaintiff was covered under the Reliance long term disability policy as a benefit of her employment with Superior Energy Services, Inc. (AR1-33). Plaintiff stopped working and submitted a claim for disability benefits on June 14, 2011 after suffering a stroke in 2011, from which she has now recovered. The claim was initially approved because the relevant records

then demonstrated that Plaintiff was not capable of performing the duties of her Own Occupation. However, Plaintiff had a continuing burden to demonstrate entitlement to additional benefits. (AR14). And, after 24 months, the definition of disability changed such that Plaintiff had to show that she was incapable of performing the duties of Any Occupation. Further, under no circumstances can Plaintiff receive more than 24 months of benefits if her condition is caused or contributed to by a mental or nervous disorder. Reliance paid benefits to her from December 12, 2011 through December 12, 2013. (AR420-423). Benefits then ceased because (1) Plaintiff was not disabled under the Any Occupation definition of disability and (2) she suffered a mental or nervous disorder that at least contributed to any continuing impairment.

In deciding to discontinue benefits, Reliance considered all of Plaintiff's medical records. However, most of the medical studies yielded negative, unremarkable or just mild results. (e.g., AR737, 711, 589, 292, 783, 784, 988-989, 935, 392, 974-975). Further, Plaintiff noted improvement in reported pain after physical therapy, and her therapist cleared her for physical activity at a level that exceeded that required to perform sedentary level work. (AR742, 891). Other than the non-binding opinion of Plaintiff's treating physician, none of the records provided objective proof of Plaintiff's allegedly disabling "brain injury due to a stroke which caused her mental incapacity, memory disability, migraines, psychiatric issues." (AR1130). In fact, to the extent that she suffers a mental condition, the records do not relate the condition to Plaintiff's stroke.

A neuropsychological report prepared by Kevin W. Greve, Ph.D. at the request of Plaintiff's treating physician showed that Plaintiff's global cognition function was intact, but she suffered "poor coping, develops physical symptoms secondary to stress." (AR548-552).

According to Dr. Greve, Plaintiff was experiencing stress at home and at work, and it was "[b]ecause of this stress [that] she is experiencing a number of physical and cognitive symptoms that interfere with her ability to function effectively at work." (AR551). Additionally, Laurie Darling, Ph.D., who treated Plaintiff for Adjustment Disorder, wrote that Plaintiff's "overall reaction and response to her physical health and other psychosocial stressors is a complicating factor and presents an obstacle to her successful return to work." (AR870). Likewise, Brian Corliss, M.D.'s notes indicate moderate, fluctuating fatigue that was exacerbated by emotional stress. (AR1002-1004). An independent medical examination performed by Daniel Trahant, M.D. at Reliance's request is consistent, as Dr. Trahant found no evidence of neurological impairment that prevents Plaintiff from working. (AR1155-1158). Dr. Trahant concluded that "[a]ll of her physical complaints are on a psychological or emotional basis." (AR1157-1158). This is critical because the Policy limits benefits for a disability based on mental illness to 24 months. Therefore, Plaintiff received the maximum duration of benefits for her condition.

After exhausting her administrative appeals, Plaintiff filed this lawsuit seeking additional benefits under the Policy. Her lawsuit is governed by ERISA.

## IV.   <u>ARGUMENT</u>

According to Local Civil Rule 7.4, "[a]ll contested motions must be accompanied by separate memoranda which must contain a concise statement of reasons supporting the motion and citations of authorities." Plaintiff filed a memorandum that, as explained below, mischaracterizes the written record that is now subject to review. Moreover, except to state that she seeks judgment under Federal Rule 56.1, neither Plaintiff's motion, her statement of facts nor

her memorandum contain a single reference to any authority that supports her claim. Accordingly, Reliance now provides this Court with the relevant, governing authority.

### A.        Summary Judgment Standard and ERISA Standard of Review

#### 1.        Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment must be issued when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, when, as is the case here, there exists no genuine issue of material fact, summary judgment is appropriate after there has been "adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986).

The Fifth Circuit has recognized the usual inferences in favor of the non-moving party do not apply in ERISA cases.  *Killen v. Reliance Standard Life In.Co.,* 776 F.3d 303, 307 (5th Cir. 2015).  Instead, in "ERISA benefits cases where the plan at issue vests discretion, as this one does, … '[t]he fact that the evidence is disputable will not invalidate the decision; the evidence need only assure that the administrator's decision fall [sic] somewhere on the continuum of reasonableness — even if on the low end.'"  *Id*. (quoting *Porter v. Lowe's Cos., Inc.'s Bus. Travel Acc. Ins. Plan,* 731 F.3d 360, 363-64 (5th Cir. 2013)).

2.      ERISA Standard of Review

Reliance has discretionary authority to interpret the terms of the Policy and to make benefit eligibility determinations. (AR14). Therefore, the only issue is whether the denial of benefits was arbitrary and capricious. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956 (1989) ("we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority. . ."). Review is limited to the record that was before Reliance at the time it made its final claim decision. *See Vega v. Nat'l Life Ins. Servs.*, 188 F.3d 287, 299-300 (5th Cir. 1999) (abrogated on other grounds).

Because Reliance's "decision is supported by substantial evidence and is not arbitrary or capricious, it must prevail." *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010) (quoting *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)). This would be so even if Plaintiff could support her claim with alternative, substantial evidence of her own, which she cannot. *See Ellis*, 394 F.3d at 273. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lain v. UNUM Life Ins. Co. of Am.,* 279 F.3d 337, 342 (5th Cir. 2002). In this case, there is no evidence, let alone substantial evidence that would support Plaintiff's claim or more important, that would show that Reliance's decision was arbitrary and capricious.

Reliance's decision can only be deemed arbitrary "if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999).

Moreover, under the abuse of discretion standard, a court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness — even if on the low end." *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389 (5th Cir. 2007).

      **B.**      <u>**Plaintiff is not Entitled to Additional Benefits**</u>

The burden of proving disability belongs to Plaintiff. (AR18). Plaintiff has not supported her motion with any legal authority. Her factual allegations do not cure the defect. However, before addressing those arguments raised in Plaintiff's memorandum, it is necessary to address that which she consistently ignores – that benefits have already been paid for the maximum 24 month period allowed under the Policy's Mental or Nervous Disorders provision.

      1.      Plaintiff's Claim is Subject to the Policy's 24-Month Mental or Nervous <u>Disorder Limitation</u>

The Policy pays benefits for a maximum 24-month period when the disability is caused or contributed to by a Mental or Nervous Disorder, which includes but is not limited to depressive disorders, anxiety disorders and somatoform disorders. (AR22). There can be no dispute that Plaintiff's claim falls within the Mental or Nervous Disorder provision, as Plaintiff own Motion states that "Dr. Greve diagnosed Plaintiff with "Adjustment Disorder", "Cognitive Disorder" and "Cerebrovascular Accident (cerebellar stroke) by history" and wrote: (a) Plaintiff's difficulty with memory, attention and concentration "shows signs of being stress-related" and that "[b]ecause of this stress she is experiencing a number of physical and cognitive symptoms that interfere with her ability to function effectively at work." Pl.'s Mem., p. 6.

Although Plaintiff omitted a pertinent part of the quote in which Dr. Greve reported that "[c]urrent testing demonstrates essentially intact cognition including memory" and that

Plaintiff's mild spatial disorganization "is not likely to have much functional impact", the portion of Dr. Greve's report that Plaintiff elected to quote and emphasize clearly demonstrates a mental/nervous component to her alleged disability. Pl.'s Mem., p. 6.

Plaintiff asserts the following facts which also clearly establish a mental/nervous condition that at least contributed to her alleged impairment:

> 36.    On December 2, 2011, Laurie Darling, Ph.D., who was treating Plaintiff for Adjustment Disorder, wrote:
> …the condition for which I am treating [Plaintiff] is not inherently disabling from a psychological perspective. However, her overall reaction and response to her physical health and other psychosocial stressors is a complicating factor and presents an obstacle to her successful return to work. Therefore, goals of treatment have included improving her coping skills to reduce mood disturbance and enhance overall functioning, including a successful return to work.
> (AR870) (emphasis added).

Pl.'s Mem., p. 7 (emphasis in original). Further, Plaintiff states the following:

> 48.    On April 13, 2012, Brian Corliss, M.D. noted that Plaintiff's fatigue was moderate and fluctuated in intensity and duration, and was exacerbated by emotional stress. (AR1002-1004).

Pl.'s Mem., p. 9.

Dr. Greve, Dr. Darling and Dr. Corliss treated and/or evaluated Plaintiff at the request of her treating physicians. Additional proof was not necessary to enforce the Mental or Nervous limitation. Nonetheless, the independent medical examination performed by Dr. Trahant does lend additional support to Reliance's position, as Dr. Trahant concluded that "[a]ll of her physical complaints are on a psychological or emotional basis. (AR1159-1160).

Dr. Trahant "suspect[ed]  a great deal of underlying psychogenic factors in her ongoing symptomatology with regard to dizziness, nausea, and headaches, as well as memory difficulty." (AR1157-1158). Dr. Trahant further concluded that Plaintiff required "follow up and ongoing

care by a clinical psychologist for the adjustment disorder with mixed anxiety/depression." (AR1159-1160). Dr. Trahant noted that Plaintiff "has been under the care of the psychologist Dr. Laurie Darling, and she still exhibits psychogenic symptomatology related to adjustment disorder and mixed anxiety/depression." (AR1159-1160).

Although not discussed with any specificity in Plaintiff's Motion, Reliance considered the records of Dr. Darling. According to Dr. Darling, Plaintiff's "overall reaction and response to her physical health and other psychosocial stressors is a complicating factor and presents an obstacle to her successful return to work." (AR870). As a result, Dr. Darling sought to improve Plaintiff's "coping skills" in an effort to "reduce mood disturbance and enhance overall functioning, including a successful return to work." (AR870).

The Fifth Circuit has held it is not abuse of discretion for an administrator to choose the position of its own retained doctors over the opinions of the claimant's doctors. *See Sweatman v. Commercial Union Ins. Co.,* 39 F.3d 594, 601-02 (5th Cir. 1994). Dr. Trahant's opinion reasonably supports the denial of additional benefits, thus preventing the decision from being considered arbitrary and capricious. Further, many of Plaintiff's doctors' records also support the conclusion. Plaintiff's mental health contributed to her alleged disability. As a result, she was not entitled to more than 24 months of benefits because she was not physically disabled.

### 2.     Plaintiff is not Physically Disabled

The half-page argument at page 10 of Plaintiff's Memorandum of Law in support of her claim that she is Totally Disabled as defined by the Policy[2] boils down to a claim that she is

---

[2] Plaintiff only partially recites the Policy's definition of disability, including that portion of the definition stating that a partial disability will be considered a total disability. Pl.'s Mem., p. 10. However, that portion of the definition of disability is of not import because Reliance has

disabled because her physicians say so. According to Plaintiff "[a]ll of plaintiff's physicians have opined that plaintiff is disabled." Pl.'s Mem., p. 10. The statement is false, as evidenced by the fact that Plaintiff goes on to reference only the opinion of Dr. Mohnot. While there is no dispute that Dr. Mohnot considers Plaintiff to be disabled, Dr. Mohnot's opinion is not binding on Reliance. *See Nord*, 538 U.S. 822. Moreover, Dr. Mohnot's opinion is not supported by a myriad of treatment records that reveal only mild findings or normal/unremarkable test results.

Assuming arguendo that Plaintiff did not suffer a mental or nervous condition that contributed to her alleged disability, she still had to prove that she was physically totally disabled from *any* occupation when benefits ceased. This is a difficult test for Plaintiff. *See e.g. Duhon v. Texaco, Inc.*, 15 F.3d 1302 (5th Cir. 1994) (a 65 year old man with only a high school education was not disabled from any occupation).

To overcome the 'any occupation" hurdle, Plaintiff must come forward with objective evidence of disability. *See e.g., Dubose v. Prudential Ins. Co. of Am.*, 85 F. App'x. 371 (5th Cir. 2003) (affirming decision to deny benefits where treating physician supported plaintiff's claim but record lacked objective evidence of the alleged disability); *Mouton v. Fresenius Med. Care of N. Am.*, 77 F. App'x. 712 (5th Cir. 2003) (affirming decision to deny benefits in the absence of objective proof of disability); *Aboul-Fetouh v. Employee Benefits Comm.*, 245 F.3d 465 (5th Cir. 2001) (same). Although considered, Plaintiff's subjective complaints are not alone sufficient to satisfy her burden. And, in this case, the objective evidence refutes Plaintiff's claim.

Plaintiff complains that she is disabled due, in part, to fatigue. However, Dr. Newman was never able to determine the cause of her claimed fatigue. (AR793-796). Dr. Corliss also

---

determined that Plaintiff is capable of working full-time under the Any Occupation definition of Disability. (AR464-467, 482-489).

considered the complaint, but determined that the symptom, which fluctuated in intensity and duration, was exacerbated by emotional stress. (AR1002-1004). Again, any disability that is contributed to by a mental or nervous condition is limited to the 24 months of benefits already paid to Plaintiff. Moreover, even if Plaintiff's reported fatigue cannot be attributed to a mental or nervous condition, there is no objective evidence that her reported fatigue is disabling.

Objective evidence of disabling headaches is also lacking. In fact, Plaintiff underwent a MRV study, which was "essentially normal" and an MRI study which revealed chronic infarct (i.e., evidence of a stroke), which is undisputed. (AR711, 590). Indeed, Reliance began paying benefits to Plaintiff in 2011. However, Plaintiff's condition improved and she was not capable of proving an ongoing physical disability by December 2013.

An August 10, 2011 MRA of Plaintiff's brain was unremarkable. (AR935). In July 22, 2013, Plaintiff continued to complain of headaches, which she described as only moderate in severity. Again, there is no evidence that the condition was severe enough to render Plaintiff disabled, and Reliance reasonably discontinued benefit payments in the absence of evidence of any other disabling symptoms.

As noted above, Plaintiff also complains that she is disabled due to dizziness and blurred vision. There is also no objective record evidence of impairing dizziness. Likewise, such evidence is lacking with regard to Plaintiff's vision complaints. In fact, on September 14, 2011, Dr. Newman noted that Plaintiff was seen by an eye doctor and was "mostly ok." (AR775).

Reliance considered Plaintiff's complaints of pain. However, a May 5, 2011 study of Plaintiff's cervical spine was unremarkable. (AR737). "No significant abnormalities" were noted on a November 2011 scan. (AR932). Further, Plaintiff's physical therapist noted that

Plaintiff's complaints of pain were reduced from 6/10 to 4/10 relative to complaints of cervical pain and from 9/10 to 6-7/10 relative to her lumbar pain following a month of treatment. (AR742). Plaintiff's therapist recommended only that she avoid *heavy* lifting, excessive overhead activity, bending or uninterrupted sitting or standing for periods in excess of 30 minutes. (AR891). Such activity is not required of the sedentary occupations identified by Reliance. (AR1115-1129).

According to Plaintiff, all of her alleged problems stem from the stroke that she suffered. (AR1130). There is no doubt that Plaintiff's medical history includes evidence of a stroke. Records from 2011 document an abnormal MRI of the brain indicative of left cerebellar infarct. (AR611-612, 911). Benefits commenced in 2011. However, two years later, Dr. Trahant concluded that Plaintiff was not limited from a neurological standpoint. (AR1157-1160). He attributed her allegedly disabling symptoms, including dizziness, nausea, headaches and memory problems to psychogenic factors as discussed above, which are subject to the 24 Mental or Nervous Disorders limitation that Reliance was obligated to enforce under the Policy.

Relative to Plaintiff's treatment, Reliance also considered follow-up cardiac testing and assessments that were ordered after Dr. Mohnot completed a neurological consultation on May 19, 2011. (AR574-576). However, a May 24, 2011 EEG study was normal, and a June 22, 2011 Holter monitor test was only "[m]ildly abnormal." (AR792), Plaintiff underwent a cardiac examination on July 14, 2011, which was normal, and by December 20, 2011, Plaintiff reported that her chest pain had improved. (AR784, 763).

As noted above, Plaintiff implies that all of her physicians support her claim of disability from a physical perspective. The fact is they do not. Plaintiff's physical therapist cleared her to

engage in activity above that required for sedentary level work. (AR891). And, Dr. Greve and Dr. Darling concluded that Plaintiff suffers mental or nervous disorders that contribute to her claim. (AR548-552, 775, 870)

3. <u>Reliance's Decision is supported by a Reliable Independent Medical Examination</u>

The medical records are sufficient to support Reliance's decision. However, Reliance also requested the independent medical examination that Dr. Trahant, a neurologist, performed. (AR1155-1160). Although Plaintiff mischaracterizes Dr. Trahant as a physician hired by Reliance to give an opinion in an attempt to avoid paying the claim, the record actually shows that Dr. Trahant is an independent physician who was secured through a third party vendor to review Plaintiff's treatment records, examine Plaintiff and provide an independent opinion regarding Plaintiff's diagnosis, recommended and appropriate treatment, anticipated length of treatment and recovery and prognosis. (AR1138-1142, 1155-1160).

Plaintiff claims that Dr. Trahant's report is unreliable because he failed to "give an opinion that [P]laintiff was not disabled as defined by the policy" and he failed to "approve[] any job for a person having [her reported] symptoms." Pl.'s Mem., p. 11. Putting aside the fact that it is Reliance, not Dr. Trahant or any other person or entity that (a) must (and did) determine whether Plaintiff is capable of performing other gainful employment and (b) has (and exercised) discretionary authority to make decisions regarding Plaintiff's eligibility under the Policy, Dr. Trahant did in fact state that Plaintiff is capable of working.

According to Dr. Trahant:

From a neurological standpoint with respect to her examination, she functions normally neurologically. I suspect a great deal of underlying psychogenic factors in her ongoing symptomatology with regard to dizziness, nausea, and headaches,

as well as memory difficulty.  The neuropsychological testing by Dr. Kevin Greve is certainly of significance in this regard and supports this conclusion.  From a neurological standpoint, I would not place her on any restrictions.

(AR1157-1158).  This statement from Dr. Trahant directly refutes Plaintiff's claim that he failed to take into consideration her reported symptoms, such as nausea, dizziness, headaches and memory problems.  Pl.'s Mem., p. 11.  Further, Dr. Trahant also wrote:

… From a purely neurological standpoint, I do feel that Ms. Barrios has a work capacity on a full-time consistent basis as of December 12, 2013, and going forward.  On her exam, she appears neurologically intact and has no residual symptomatology from a cerebellar infarction.  All of her physical complaints are on a psychological or emotional basis.

(AR1159-1160).  How Plaintiff arrives at the conclusion that Dr. Trahant did not conclude that she is capable of working is baffling.  Clearly, Plaintiff is capable of working, and Reliance obtained a Residual Employability Analysis that identified several occupations that Plaintiff is capable of performing.  (AR1115-1129).

4.    Dr. Greve's Report Does Not Support Plaintiff's Claim

Plaintiff relies on the report of Dr. Greve.  Pl.'s Br., p. 12-13.  Before the substance of Dr. Greve's report, which actually supports Reliance's decision, is discussed, it is necessary to address Plaintiff' lack of candor with the Court, as she repeatedly misrepresents the record.

a.    **Plaintiff has Misrepresented the Record**

Plaintiff can only support her claim with the report of Dr. Greve by (a) omitting portions of his opinion from the quoted text within her Memorandum and (b) ignoring the relevant Policy provisions that Reliance enforced.  As she does throughout her motion, Plaintiff has intentionally "quoted" the record with wanton disregard for the accuracy (or inaccuracy) of her statements.  For instance, at page 13 of her brief, Plaintiff purportedly includes a quote from Dr. Greve's

report.  However, without any indication that she departed from the text of the source document, Plaintiff omits Dr. Greve's statement that (1) "[c]urrent testing demonstrates essentially intact cognition including memory.  There is evidence of mild spatial disorganization consistent with her cerebellar pathology.  This is not likely to have much functional impact" and that (2) relative to Plaintiff's memory, attention and concentration issues: "[t]his is a non-specific finding that could be related to the cerebellar stroke but shows signs of being stress-related."  (AR551).  This is just one example.  There are many other examples of blatant record misrepresentations in Plaintiff's motion (*e.g.*, factual background paragraphs 19, 22, 23, 26, 29, 30, 31, 32).

Plaintiff often misstates the written record, at times throwing the significance of the quotation mark to the wind and omitting the author's words an adding her own words to modify the text to favor her claim without ever indicating that she has done so.  For instance, in paragraph 30 of her factual statements, Plaintiff rewrites Dr. Greves statement that Plaintiff has "poor coping, develops physical symptoms secondary to stress" by adding "which was brought on by the physical stroke and loss of brain function."  The latter phrase appears nowhere in Dr. Greve's report and is disputed by Reliance.  (AR548).

That Plaintiff has misrepresented so many record references is even more disturbing when one considers that Plaintiff took full advantage of the fact that Reliance filed a timely motion before Plaintiff obtained an extension of time to file her own motion.  By Order dated April 1, 2015, this Court instructed the parties to file their respective dispositive motions no later than June 20, 2015.  (Dkt. 11).  Reliance complied.  (Dkt. 13).  With Reliance's consent, on June 22, 2015, Plaintiff filed a motion to extend the filing deadline to June 24, 2015.  (Dkt. 14).  Plaintiff copied substantially and largely verbatim from Reliance's statement of facts in which

the correct text and record citations appeared. However, when pasting many of the statements into her own brief, Plaintiff made a conscious decision to inaccurately modify the same to suit her own, otherwise unsupported arguments. This is apparent from a comparison of the enumerated factual paragraphs in Plaintiff's motion and those contained in Reliance's Motion.

| Compare Dockets 15 (Defendant's Motion) and 17 (Plaintiff's Motion) | | | | | | | |
|---|---|---|---|---|---|---|---|
| Reliance. Stmt. No. | Plaintiff Stmt. # | Reliance. Stmt. No. | Plaintiff Stmt. # | Reliance. Stmt. No. | Plaintiff Stmt. # | Reliance. Stmt. No. | Plaintiff Stmt. # |
| 8 | 14 | 21 | 25 | 36 | 35 | 47-49 | 45 |
| 11 | 16 | 23 | 26 | 37 | 36 | 50 | 46 |
| 12 | 17 | 24 | 27 | 39 | 37 | 51 | 48 |
| 13 | 18 | 25 | 28 | 40 | 38 | 52 | 49 |
| 14 | 19 | 26 | 29 | 42 | 39 | 54 | 50 |
| 15 | 20 | 27 | 30 | 43 | 40 | 57 | 51 |
| 16 | 21 | 28 | 31 | 44 | 41 | 58 | 52 |
| 17 | 22 | 29 | 32 | 45 | 42 | | |
| 18 | 23 | 30 | 33 | 46 | 43 | | |
| 20 | 24 | 35 | 34 | 47 | 44 | | |

Plaintiff violated the spirit of the initial order that contemplated simultaneous submission of cross motions for summary judgment.[3] More important because Plaintiff unashamedly misstated the record, each of her contentions should be viewed with a great degree of skepticism, including but not limited to Plaintiff's assessment of Dr. Greve's report.

    b.    **Despite Plaintiff's Claim to the Contrary, Dr. Greve's Report does not Support her Claim to Additional Benefits**

Dr. Greve's neuropsychological evaluation, which was performed at the request of Dr. Mohnot, not Reliance, is significant. As indicated from the language that Plaintiff attempted to hide from this Court, Dr. Greve determined that Plaintiff's cognition, including memory, is essentially intact. Her mild spatial disorganization is "not likely to have much functional impact." (AR551). According to Dr. Greve, it is Plaintiff's home and work-related stress, that is

---

[3] When Reliance agreed to the extension, Plaintiff's counsel assured counsel for Reliance that he would not even review and use Reliance's motion in preparing Plaintiff's opening brief.

causing her to "experience[e] a number of physical and cognitive symptoms that interfere with her ability to function effectively at work. (AR551). In other words, consistent with the findings of Dr. Trahant, any continuing disability is caused or contributed to by a mental or nervous disorder. Again, the Policy limits benefits for any disability that is caused or contributed to by a mental or nervous disorder to 24 months, which has been paid. (AR22, 464-467, 482-489).

It matters not, as Plaintiff has argued, that Dr. Greve did not "release Plaintiff to work" or approve jobs that would be appropriate for Plaintiff. Pl.'s Mem., p. 13. What matters is that the report submitted on Plaintiff's behalf fails to demonstrate that Plaintiff is incapable of working. In other words, the report does not satisfy Plaintiff's burden of proving a continuing disability.

## V.     THE SSA's DECISION IS NEITHER BINDING NOR DETERMINATIVE

In Reliance's September 26, 2013 and May 30, 2014 benefit denial letters, Reliance advised Plaintiff that it considered the fact that she was awarded SSA benefits but it also explained the basis for its decision to nonetheless discontinue benefits under the Policy. (AR464-467, 482-489). As explained in the letters, the SSA was not privy to information available to Reliance, such as Dr. Trahant's report. Based on these letters, it is unclear how Plaintiff can argue (as she does) that Reliance "completely ignored [the SSA] records" contained within the record at pages AR961-966. Pl.'s Mem., p. 13. Moreover, although considered, the SSA award is not relevant, as it was issued in February 2012, when Reliance was still paying benefits, and sheds no light of Plaintiff's condition two years later, when benefits ceased.

## VI.    RELIANCE'S STRUCTURAL CONFLICT IS OF NO CONSEQUENCE

It is of no consequence that Plaintiff and/or her counsel find it hard to believe that Reliance both pays and decides claims, as argued at page 13 of Plaintiff's memorandum. The

Policy grants to Reliance discretionary authority. (AR14). And, the practice is not unusual. This Court may consider the structural conflict that results from the fact that Reliance also pays any benefits due under the Policy. However, this is only one of many factors that the Court should consider. *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 537 (5th Cir. 2007). *See also Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2351 (2008). The structural conflict serves as a tiebreaker when the other factors are closely balanced.

The conflict in this case is a non-issue because the other factors are not closely balanced. *See e.g., Sanders v. Unum Life Ins. Co. of Am.*, 553 F.3d 922, 925 (5th Cir. 2008) (refusing to use the structural conflict as a tie breaker because of the absence of closely balanced evidence). Plaintiff relies on Dr. Mohnot; however, his opinion is refuted by the medical records. Further, Plaintiff relies on the report of Dr. Greves, which report actually supports Reliance's decision to discontinue benefits. The SSA awarded benefits to Plaintiff in 2011, but Reliance also deemed Plaintiff disabled then, and the SSA decision was not persuasive in 2013. Simply, put, there is no evidence that Plaintiff was physically disabled as of December 2013, and any alleged impairment was the result of limitations caused or contributed to by a mental or nervous disorder for which Plaintiff has already exhausted her available benefits. Reliance weighed all of this evidence and reasonably concluded that Plaintiff was not entitled to additional benefits.

## VII.   <u>CONCLUSION</u>

According to Plaintiff, "[i]f the facts are somehow a 50/50 tie, then plaintiff is given the benefit of the doubt." Pl.'s Mem., p. 14. Not so. In fact, under the law of the Fifth Circuit, Reliance's decision cannot be disturbed if it is supported by substantial evidence even if Plaintiff can support her claim with alternative, substantial evidence to support her claim. *See Ellis*, 394

F.3d at 273. Regardless, Plaintiff in this case did not support her claim with substantial evidence and Reliance's decision to discontinue benefits is the only outcome supported by the record. Accordingly, Plaintiff's Motion for Summary Judgment should be denied.

Respectfully submitted,

TAYLOR WELLONS POLITZ & DUHE, APLC

*s/Angela J. O'Brien*

BY: _____

Paul J. Politz, Esquire
Angela J. O'Brien, Esquire
1515 Poydras Street
New Orleans, LA 70112
Telephone: (504) 525-9888
Email: PPolitz@twpdlaw.com
Email: AOBrien@twpdlaw.com

Attorneys for Defendant,
Reliance Standard Life Insurance Company

Date: July 20, 2015

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing response in opposition to Plaintiff's Motion for Summary Judgment has been electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing to all counsel of record in this matter via the electronic filing system. I further certify that I mailed the foregoing document by first class mail to all counsel of record who are not participants in the CM/ECF system on this 20th day of July, 2015.

*s/Angela J. O'Brien*

_____
Taylor, Wellons, Politz & Duhe, APLC